# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE TO STOP AIRPORT EXPANSION,    )
c/o Edward Gorman    )
68 Huckleberry Lane    )
East Hampton, New York 11937    )
    )  COMPLAINT
PAT TRUNZO, III    )
10 Cedar Trail    )
East Hampton, New York 11937    )
    )
PAT TRUNZO, JR.    )
148 Buckskill Road    )
East Hampton, New York  11937    )
    )
EDWARD GORMAN    )
68 Huckleberry Lane    )
East Hampton, New York 11937    )
    )
              Plaintiffs,    )
    )
          v.    )
    )
DEPARTMENT OF TRANSPORTATION,    )
NORMAN Y. MINETA, SECRETARY OF    )
TRANSPORTATION, THE FEDERAL AVIATION    )
ADMINISTRATION, and JANE GARVEY, ADMINISTRATOR    )
OF THE FEDERAL AVIATION ADMINISTRATION,    )
    )
              Defendants.    )

## INTRODUCTION

1.    Plaintiffs bring this action to challenge the decision of Defendants to award approximately $1.5 million under the Airport Improvement Program to the Town of East Hampton for the reconstruction and rehabilitation of the aircraft apron at the East Hampton Airport.

2.    Plaintiffs request injunctive relief requiring Defendants to refrain from disbursing any Airport Improvement Program funds to the Town of East Hampton in furtherance of apron

reconstruction or rehabilitation, until Defendants have fully complied with the National

Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4335, and its own regulations

governing applications for Airport Improvement Program funds.

<u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, 28 U.S.C. §§ 2201-2202, and 5 U.S.C. §§ 701-706.  Venue is proper in this

district under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

<u>PARTIES</u>

4.      The Committee to Stop Airport Expansion ("Committee") is an unincorporated

association of persons who reside in the vicinity of the East Hampton Airport ("Airport").  The

Committee is committed to restricting the uncontrolled growth of the East Hampton Airport and

is concerned about the environmental impacts that will result from further development,

construction, expansion, or improvement of the East Hampton Airport.  The Town of East

Hampton has been significantly modifying the Airport since the adoption of the 1988 Master

Plan Update without benefit of public input.  The Committee brings this action on behalf of itself

and its members who live near the East Hampton Airport.

5.      Plaintiff Pat Trunzo, III is a resident of the Town of East Hampton and a member

of the Committee to Stop Airport Expansion.  Mr. Trunzo, a former member of the Town Board

of the Town of East Hampton, resides at 10 Cedar Trail, East Hampton, New York.  Due to the

proximity his home to the Airport, Mr. Trunzo is acutely affected by overflight activity

stemming from Airport operations.  Mr. Trunzo is particularly affected by on-airport noise

generated from aircraft during engine run-ups and aircraft take-offs, as well as from reverse-

thrust noise produced by jet aircraft upon landing, all of which is audible from his home.

6.      Plaintiff Pat Trunzo, Jr. is a resident of the Town of East Hampton and a member of the Committee to Stop Airport Expansion, resides at 148 Buckskill Road, East Hampton, New York.  Because his home is located approximately 1.04 miles east of the Airport, directly in line with the main runway, Runway 10-28, his quality of life is directly impacted by overflight activity stemming from Airport operations.  Mr. Trunzo is particularly affected by the visual and sound impact of aircraft on final approach to landing on Runway 28 and aircraft taking off from Runway 10.  Moreover, due to the proximity of his home to the Airport, Mr. Trunzo is acutely affected by on-airport noise generated from aircraft during engine run-ups and aircraft take-offs, as well as from reverse-thrust noise produced by jet aircraft upon landing, all of which is audible from his home.

7.      Plaintiff Edward Gorman is a resident of the Town of East Hampton and a member of the Committee to Stop Airport Expansion.  Mr. Gorman resides at 68 Huckleberry Lane, East Hampton, New York, which is part of the Georgica Estates residential community.  Because Mr. Gorman's home lies approximately 3/4 of a mile from the Airport, his quality of life is directly impacted by overflight activity stemming from Airport operations.  Mr. Gorman is particularly affected by aircraft on final approach to landing on Runway 28, those taking off from Runway 10, and those circling to land on Runway 22.  Moreover, due to the proximity of his home to the Airport, Mr. Gorman is acutely affected by on-airport noise generated from aircraft during engine run-ups and aircraft take-offs, as well as from reverse-thrust noise produced by jet aircraft upon landing, all of which is audible from his home.

8.      Members of the Committee, including the individually named plaintiffs, reside and own property in close proximity to the East Hampton Airport and will be harmed by any increased noise and air pollution and traffic associated with the operation of the Airport.  The

construction of the proposed apron project and the operation of the Airport, after the proposed

apron project is complete, will adversely affect the environment in the vicinity of the Airport and

the quality of life of the members of the Committee, including the individually named plaintiffs.

9.      Defendant United States Department of Transportation ("Department of

Transportation") is an agency of the federal government, charged with the duty to provide for the

transportation needs of the United States, including the safe and efficient air transport of its

citizens.  Pursuant to the Airport and Airway Improvement Act of 1982, the Department of

Transportation administers grants awarded under the Airport Improvement Program.  As an

agency of the federal government, the Department of Transportation is subject to the provisions

of NEPA.

10.     Defendant Norman Y. Mineta is named here solely in his official capacity as

Secretary of the Department of Transportation.  In that capacity Secretary Mineta is responsible

for the administration, operations, and activities of the Department of Transportation, including

the administration and approval of grants under the Airport Improvement Program and the

agency's compliance with NEPA.

11.     Defendant Federal Aviation Administration ("FAA") is part of the Department of

Transportation, and, as such, is subject to the provisions of NEPA.  The FAA is responsible for

administering aviation programs under delegation by the Secretary of Transportation, including

the Airport Improvement Program.

12.     Defendant Jane Garvey is named here solely in her official capacity as

Administrator of the FAA.  In that capacity, Administrator Garvey is responsible for the

administration, operations, and activities of the FAA, including the administration and approval

of grants under the Airport Improvement Program and the agency's compliance with NEPA.

4

FACTS

Background

13.     The Airport and Airway Improvement Act of 1982 ("AAIA") authorizes the Secretary of the Department of Transportation to establish a federal grant program intended to encourage the development of airports through federal funding.  49 U.S.C. §§ 47101-47131; 14 C.F.R. Part 152.  The FAA administers the Airport Improvement Program ("AIP") on behalf of the Secretary of Transportation.

14.     Airports that meet the eligibility requirements, as set forth in the Airport and Airway Improvement Act and FAA regulations, may obtain federal funding through the AIP for airport planning and engineering and airport development projects.  To be eligible for an AIP grant, the proposed airport development project must be included in an Airport Layout Plan ("ALP") approved by the FAA.

15.     Approval of an AIP grant is a federal action subject to the environmental review requirements set forth in NEPA.   Therefore, before the FAA may award an AIP grant, the agency must demonstrate compliance with NEPA.

16.     The East Hampton Airport is owned and operated by the Town of East Hampton, New York (the "Town").  The Town is vested with independent governing authority and governed by an elected legislative body, known as the "Town Board."  The Town Supervisor is the presiding officer of the Town Board and the chief fiscal officer of the Town.

17.     On April 6, 2001, the Town Board adopted Resolution No. 483, authorizing the Town Supervisor to make an application for an AIP grant to fund apron repaving and marking at the East Hampton Airport.  In the resolution, the Town Board authorized the Town Supervisor to

notify the FAA that the project qualifies for a categorical exclusion from the environmental review requirements under NEPA.

18.     Upon information and belief, the apron project is described in a design report entitled "Apron Reconstruction – Phase II."   The report was prepared by C&S Engineers, Inc. ("C&S"), an engineering consulting firm hired by the Town Board.  As described in the design report, the project consists of "the removal and reconstruction of the bituminous asphalt pavement parking apron," including "excavation, grading, drainage, and marking that is necessary to complete construction."  The design report also states that the project is in accordance with the Phase 2 improvements described in the updated 1994 Airport Master Plan and 1994 ALP.

The 1988 Master Plan Update and 1989 ALP

19.     Upon information and belief, several years of planning and environmental review performed by the Town Board and its consultants, TransPlan Inc. and Middleton, Kontokosta Associates, culminated in the 1988 Master Plan Update, a draft Environmental Impact Statement and final Environmental Impact Statement ("EIS"), and an ALP.  The final EIS was issued in December 1988.  Upon information and belief, the Town Board approved or authorized a designated Town official to approve the ALP in December 1989 ("1989 ALP").

20.     Upon information and belief, FAA approved the 1989 ALP based on and in reliance upon information and analysis contained in the Master Plan, Draft EIS and Final EIS.

21.     The proposed projects evaluated in the 1988 Master Plan Update and the EIS were grouped in two categories, Phase I and Phase II.   As described in the 1988 Master Plan Update and the EIS, both Phase I and Phase II contained projects proposing improvements to the apron area at the Airport, the runways and the terminal.

22.     Phase I proposed improvements included the following apron projects: Aircraft Tiedown Apron (15,600 square feet), Itinerant Aircraft Apron and Helipad (25,200 square feet), and Hangar Aprons and Taxilanes (66,000 square feet).  The total square footage attributed to apron projects included in the proposed Phase I improvements thus amounted to 106,800 square feet (35,600 square yards).

23.     Phase II proposed improvements included the following apron projects: Hangars, Aprons, and Taxilanes (20,750 square feet), Aircraft Tiedown Apron (75,700 square feet), Itinerant Aircraft Apron (51,600 square feet), Aircraft Tiedown Apron (119,100 square feet), and Hangar Aprons and Taxilanes (120,000 square feet).  The total square footage attributed to apron projects included in the proposed Phase II improvements thus amounted to 387,150 square feet (129,050 square yards).

24.     Upon consideration of the 1988 Master Plan Update, the 1989 ALP, and the EIS, the Town Board adopted Resolution No. 145, resolving "that most, but not all Phase I improvements be adopted and implemented and that three (3) of the Phase II projects be adopted and implemented."  Resolution No. 145 further states that selection of these projects reflects the finding in the EIS that the Phase II projects that were rejected will have significant adverse environmental impacts.

25.     Three of the projects approved by the Town Board in Resolution No. 145 relate to the airport apron capacity: Aircraft Tiedown Apron (15,600 square feet), Itinerant Aircraft Apron and Helipad (25,200 square feet), and Hangar Aprons and Taxilanes (66,000 square feet).  In total, the Town Board approved all Phase I apron improvements, amounting to 106,800 square feet (35,600 square yards) of apron area on the 1989 ALP.  The Town Board adopted none of the proposed Phase II apron projects and no project identified as Apron Reconstruction – Phase II.

7

The 1994 ALP

26.     At Defendants' request, in 1992, the Town Board commissioned C&S to prepare an updated ALP.  The resulting ALP Update, which was funded through an AIP grant to the Town, was completed in 1994 (the "1994 ALP.")

27.     The final report prepared in conjunction with the 1994 ALP states that a "top priority" in developing the 1994 ALP is to "maximize the amount of aircraft parking apron available in the terminal area."

28.     The final report explains that the 1994 ALP provides for three phases of apron reconstruction and expansion.  The proposed Phase 1 apron reconstruction and expansion involves 11,870 square yards (35,610 square feet) of apron area.  The proposed Phase 2 apron reconstruction and expansion involves 12,830 square yards (38,490 square feet) of apron area.  Finally, the proposed Phase 3 apron expansion involves 16,000 square yards (48,000 square feet) of apron area.

29.     Upon information and belief, the Town completed Phase IB of the proposed apron reconstruction and expansion in 1998, in conjunction with another project - the reconstruction and widening of Runway 10-28.  Upon information and belief, the AIP grant approved by the FAA in 2001and challenged here is for Apron Reconstruction – Phase II.

30.     In total, the 1994 ALP proposes improvements to the apron area amounting to 122,100 square feet (40,700 square yards).  The 1994 ALP thus represents an increase of 15,300 square feet (5,100 square yards) over the apron capacity approved in the 1989 ALP.  The 1994 ALP represents an increase of 66,723 square feet (22,241 square yards) over the apron area that existed in 1992.

31.     The final report on the 1994 ALP concluded that a federal environmental assessment and/or a state-level environmental impact statement would need to be undertaken to fully assess the environmental impacts associated with airport development projects not approved by the Town Board in Resolution No. 145.

32.     Upon information and belief, the Town did not commission or prepare either an environmental assessment or an environmental impact statement to examine the environmental impacts associated with any the proposed projects depicted on or described in the 1994 ALP.

33.     Upon information and belief, FAA did not prepare or review any environmental analysis or document prepared pursuant to the requirements of NEPA prior to approving the 1994 ALP.

34.     Upon information and belief, the 1994 ALP was never approved or adopted by the Town Board.  Nevertheless, the Town Supervisor signed the 1994 ALP and submitted it to the FAA for approval.  By letter dated August 23, 1994, FAA approved the 1994 ALP.  Based on the 1994 ALP, between 1994 and 2001, FAA awarded the Town several million dollars of financial assistance in the form of AIP grants to be used for development of the East Hampton Airport.

35.     In a July 20, 2001 legal opinion memorandum, FAA concluded that the 1994 ALP is invalid because it was not adopted the Town Board.  On July 25, 2001, FAA notified the Town by letter that the 1994 ALP is invalid and that FAA could not locate within its files the ALP it had previously approved, i.e., the 1989 ALP.  FAA further stated that it could not consider funding the Apron Phase II project unless "the 1994 ALP is validated by a resolution by the Town Board approving the 1994 ALP and authorizing . . . the Town Supervisor to sign and approve the ALP."

36.     The Town Board did not validate the 1994 ALP, as proposed by FAA.  Instead, on August 3, 2001, the Town Board adopted Resolution No. 1023, authorizing the Town Supervisor to re-sign and submit a copy of the 1989 ALP to FAA.  Upon information and belief, the Town Supervisor signed and submitted an ALP to FAA on August 8, 2001.  The ALP submitted on August 8, 2001 is not the ALP or a copy of the ALP approved by the Town Board in December 1989.

37.     By letter dated August 20, 2001, FAA approved, as the ALP of record for the East Hampton Airport, the ALP ("1989/2001 ALP") that the Town had submitted on August 8, 2001.

Inadequate Environmental Review of Apron Reconstruction – Phase II

38.     In January 2001, C&S, the engineering consulting firm hired by the Town Board, prepared a "Federal Aviation Administration Environmental Evaluation Form 'A' (Basic Categorical Exclusion) for Airport Development Projects" in connection with Apron Reconstruction – Phase II.  The Form A completed by C&S, on behalf of the Town, represents that the Apron Reconstruction – Phase II project meets the requirements of a categorical exclusion, and therefore no further environmental review under NEPA is required.  The Form A completed by C&S also states that the proposed apron project is consistent with the 1994 ALP Update.

39.     By letter dated February 1, 2001, FAA notified the Town that it agreed with the categorical exclusion determination made by C&S in Form A.  Ms. Marie C. Jenet, an Environmental Specialist, wrote to Mr. Patrick Ryan, Airport Manager for the East Hampton Airport, stating that the FAA had reviewed the Form A submitted for the proposed apron reconstruction project and made a "formal Federal Environmental Finding" that the project qualified for treatment as a categorical exclusion.

10

40.     Upon information and belief, FAA's February 1, 2001 categorical exclusion determination for the proposed apron project was made based on the 1994 ALP.

41.     Upon information and belief, after determining that the 1994 ALP was no longer valid, FAA did not conduct any additional environmental review or assessment or make any additional written environmental finding in connection with the proposed apron reconstruction project.

42.     Upon information and belief, on or about September 26, 2001, Defendants granted final approval to the Town's request for AIP funding for the proposed apron project without further environmental analysis.

National Environmental Policy Act

43.     NEPA requires federal agencies to prepare a detailed statement evaluating the environmental impacts of and alternatives to all proposed "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

44.     The Council on Environmental Quality ("CEQ") has promulgated regulations to guide federal agencies when implementing NEPA.  40 C.F.R. §§ 1500-1517.  CEQ regulations require federal agencies to prepare an "environmental assessment" to determine whether an environmental impact statement is required.  40 C.F.R. § 1501.4.   When the agency decides not to prepare an environmental impact statement, CEQ regulations require that the agency explain its determination in a "finding of no significant impact."  *Id.*

45.     CEQ regulations also permit federal agencies to categorically exclude types of activities from the case-by-case environmental assessment review. 40 C.F.R. §§ 1500.4(p), 1507.3(b)(2)(ii), 1508.4.  A categorical exclusion is defined in the CEQ regulations as "a category of actions which do not individually or cumulatively have a significant effect on the

human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. § 1508.4.

46.     FAA has issued guidance for compliance with NEPA in the context of airport development, which is set forth in the Airport Environmental Handbook, FAA Order 5050.4A (1989, as amended).  Unless categorically excluded, an environmental assessment and environmental impact statement or a finding of no significant impact are required for proposed federal actions relating to airports, including approval of funding for airport development projects.  FAA Order 5050.4A ¶ 10(b). Paragraph 5(a)(3) of the Airport Environmental Handbook identifies approval of funding for airport development projects as a federal action subject to NEPA.

47.     Paragraph 23 of the Airport Environmental Handbook also specifies a list of categories of activities that qualify for treatment as categorical exclusions.  The FAA has included apron construction and repair work, "including extension, strengthening, reconstruction, resurfacing, marking, grooving . . . on existing airports" among the projects that may be categorically excluded from the requirement for a formal environmental assessment.  The Airport Environmental Handbook also states that projects that would otherwise qualify for a categorical exclusion must undergo NEPA review if the cumulative impacts of the project may have a significant effect on the environment or if extraordinary circumstances are extant or expected.  FAA Order 5050.4A ¶¶21,22,23,24 and 26.

48.     Pursuant to paragraph 23 of the Airport Environmental Handbook, on February 1, 2001, FAA made a determination based on the 1994 ALP that the Apron Reconstruction – Phase II project is entitled to treatment as a categorical exclusion.

## COUNT I

49.     Plaintiffs repeat and reallege the foregoing allegations.

50.     By letter dated July 25, 2001, Defendants declared the 1994 ALP invalid.

51.     Therefore, when making the February 1, 2001 determination that the Apron Reconstruction – Phase II project should be categorically excluded from additional NEPA review, Defendants based that determination on information presented in an invalid ALP.

52.     On August 8, 2001, the Town submitted to Defendants a re-signed copy of the 1989 ALP.  By letter dated August 20, 2001, Defendants approved the ALP "subject to the condition that every significant item of airport development identified on the ALP may not be undertaken without the appropriate environmental review and written environmental finding by the Federal Aviation Administration."

53.     Upon information and belief, Defendants did not perform any environmental review of the proposed Apron Reconstruction – Phase II project based on the information provided in the 1989/2001 ALP.

54.     When making the February 1, 2001 categorical exclusion determination, Defendants relied on the 1994 ALP, which was never approved by the Town.  Defendants therefore lacked accurate and complete information concerning the existing and proposed layout of the Airport.   Without accurate and complete information concerning the existing and proposed layout of the Airport, Defendants could not properly determine whether to grant a categorical exclusion or to undertake further environmental review under NEPA.  Defendants acted in an arbitrary and capricious manner and not in accordance with NEPA when they made the February 1, 2001 categorical exclusion determination.

55.     Defendants should be enjoined from disbursing any AIP grant monies to the Town until such time as Defendants have fully complied with NEPA.  Absent injunctive relief from this Court, Defendants will not conduct an assessment of the potential direct, indirect, and cumulative environmental impacts of the proposed Apron Reconstruction – Phase II.  The Plaintiffs have no adequate remedy at law and will suffer irreparable and permanent injury if not awarded relief by this Court

## COUNT II

56.     Plaintiffs repeat and reallege the foregoing allegations.

57.     Although CEQ regulations permit federal agencies to categorically exclude types of activities from the case-by-case environmental assessment review, there are several exceptions to the categorical exclusion rule.  FAA's Environmental Handbook states that these exceptions, described in paragraphs 21, 22, 24, and 26, "shall be reviewed" in making the determination whether to grant a categorical exclusion.  FAA Order 5050.4A ¶ 23(a).

58.     A categorical exclusion is impermissible when the proposed federal action involves "extraordinary circumstances," as described in paragraph 24 of the Airport Environmental Handbook. FAA Order 5050.4A  ¶¶ 23(a) and 24.  Paragraph 24 contains a list of factors that trigger the requirement for an environmental assessment with respect to a project that otherwise would qualify for a categorical exclusion.  An action that is likely to be highly controversial on environmental grounds, be inconsistent with plans or goals that have been adopted by the community in which the project is located, have a significant impact on noise levels in noise sensitive areas, have a significant impact on air quality, or directly or indirectly affect human beings by creating a significant impact on the environment does not qualify for a categorical exclusion. FAA Order 5050.4A ¶ 24.

59.     Upon information and belief, the Apron Reconstruction – Phase II project is part of a three-phase plan that ultimately will expand the aircraft parking capacity at the East Hampton Airport.

60.     The 1988 Master Plan Update, the most recent airport master plan approved by the Town, contemplates an airport serving aircraft classified as utility aircraft with runways designed to accommodate aircraft weighing 12,500 pounds gross weight on single wheel gear. The number of aircraft operations at the Airport involving aircraft weighing more than 12,500 pounds gross weight, including jet aircraft has been increasing.  Jet aircraft are not classified as utility aircraft.  The expanded aircraft parking facilities will provide parking space for this increased air traffic at the Airport.  Increased jet air traffic is likely to result in significant impacts on the environment.

61.     The three-phase plan to increase the aircraft parking capacity at the Airport is inconsistent with the 1988 Master Plan Update.  The proposed project is part of the three-phase plan.

62.     In view of the circumstances described above, Defendants were arbitrary and capricious in concluding that the Apron Reconstruction – Phase II project qualifies for a categorical exclusion from further NEPA review.  In addition, Defendants failed to follow its own regulations in determining whether the proposed project fell within one of the many exceptions to the list of categorically excluded actions.

63.     Absent injunctive relief from this Court, Plaintiffs will be deprived the right under NEPA to an assessment of the potential direct, indirect, and cumulative environmental impacts of the proposed Apron Reconstruction – Phase II.  Plaintiffs have no adequate remedy at law and will suffer irreparable and permanent injury if not awarded relief by this Court.   Defendants

15

should be enjoined from disbursing any AIP funds to the Town until such time as Defendants

comply with NEPA.

COUNT III

64.     Plaintiffs repeat and reallege the foregoing allegations.

65.     Defendants may not grant a categorical exclusion when the proposed federal

action involves potential "cumulative impacts."

66.     Paragraph 26 of the Airport Environmental Handbook requires that Defendants

consider the cumulative impact of a proposed action and the consequences of subsequent related

action when determining whether an environmental impact statement is required.  *Id*. ¶ 16.  The

Airport Environmental Handbook incorporates the CEQ definition for "cumulative impact,"

which states: "'Cumulative impact' is the impact on the environment which results from the

incremental impact of the action when added to other past, present, and reasonably foreseeable

future actions regardless of what agency or person undertakes such other actions." *Id*.

67.      Defendants failed to examine whether the proposed apron project is likely to

have significant cumulative impacts when added to other past, present, and reasonably

foreseeable future actions.

68.     Upon information and belief, the Apron Reconstruction – Phase II project is part

of a three-phase plan that ultimately will expand the aircraft parking capacity at the East

Hampton Airport.  The current Apron Reconstruction project is not included in the 1989/2001

ALP.  The 1989/2001 ALP also does not depict all existing facilities or other projects proposed

by the Town.  The 1989/2001 ALP did not provide Defendants with adequate information to

evaluate whether the proposed project, in combination with other past, present, and reasonably

16

foreseeable future development, could create cumulative environmental impacts that would warrant an Environmental Assessment or an Environmental Impact Statement.

69.     Defendants' decision that the Apron Reconstruction – Phase II project was categorically excluded from further review under NEPA was arbitrary, capricious, and not in accordance with law.

70.     Defendants should be enjoined from disbursing any AIP grant monies to the Town until such time as Defendants have fully complied with NEPA.   Absent injunctive relief from this Court, the Committee and its members and the individually named plaintiffs will be deprived the right under NEPA to an assessment of the potential direct, indirect, and cumulative environmental impacts of the proposed Apron Reconstruction – Phase II.  Plaintiffs have no adequate remedy at law and will suffer irreparable and permanent injury if not awarded relief by this Court.

COUNT IV

71.     Plaintiffs repeat and reallege the foregoing allegations

72.     The AIP and Defendants' regulations state that for a project to be eligible for an AIP grant, the proposed airport development project must be included in an Airport Layout Plan (or "ALP") approved by the FAA.  49 U.S.C. §47107(a)(16); 14 C.F.R. §§ 151.5(a), 152.107(c)(3).

73.     For purposes of the AIP, "airport development" means any work involving constructing, improving or repairing any public airport or any portion thereof.  Each project for airport development for which a AIP grant is sought must "[b]e described in an approved airport layout plan." 14 C.F.R. § 152.107(c)(3).

17

74.     According to Defendants' regulations, an ALP, at a minimum, must show, *inter alia*, the location and nature of existing and proposed airport facilities such as runways, taxiways, aprons, terminal buildings, hangers, and roads.

75.     Upon information and belief, the Defendants failed to require that the ALP upon which the Apron Reconstruction - Phase II project grant was based comply with the requirement that the ALP depict all improvements and facilities currently in existence and planned for the airport.

76.     Upon information and belief, Defendants knew or should have known that the 1989/2001 ALP did not accurately reflect or depict the existing and planned improvements and facilities for the East Hampton Airport.

77.     Defendants' approval of the AIP grant application without an ALP that depicted current and planned improvements and facilities at the East Hampton Airport at the time of the grant approval was arbitrary, capricious or otherwise not in compliance with the law.

78.     Defendants should be enjoined from disbursing any AIP funds to the Town in furtherance of apron reconstruction or rehabilitation, until the Defendants have fully complied with its own regulations governing the awarding of grants under the AIP.


<u>RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1.      Vacate the Defendants' determination that the project is entitled to a categorical exclusion from the requirements of NEPA, and remand the case to the FAA for the preparation of an environmental assessment;

2.      Enjoin Defendants from disbursing any funds to the Town in connection with construction of the Apron Reconstruction – Phase II project, pending full compliance with NEPA;

3.      Enjoin Defendants from disbursing any funds to the Town in connection with the August 2001 approval of the grant application for the construction of the Apron Reconstruction - Phase II project, pending submission by the Town of a grant application that complies with AIP regulations, including the requirement that an approved ALP be included in the application package, for approval by the FAA;

4.      Award Plaintiffs their attorneys' fees, costs, and disbursements; and

5.      Award such other and further relief as the Court may deem appropriate.

Respectfully submitted,

_____
Sheila D. Jones (Bar # 955260)
Albert M. Ferlo (Bar # 290395)
Jessica O'Donnell (Bar # 473166)
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4000
(202) 887-4288 facsimile

Attorneys for Plaintiffs

Date: April 2, 2002