UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMMITTEE TO STOP AIRPORT EXPANSION, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-0619 (JR) |
| | ) | |
| DEPARTMENT OF TRANSPORTATION, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants the Department of Transportation, <u>et al.</u>, by and through the United States Attorney for the District of Columbia, respectfully move to dismiss this matter pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiffs lack standing and this Court lacks subject matter jurisdiction to consider the claims raised in plaintiffs' Complaint.

A proposed Order consistent with this Motion is attached hereto.

Respectfully submitted,

_____
ROSCOE C. HOWARD, JR., DC Bar #246470
United States Attorney

_____
MARK E. NAGLE, DC Bar #416364
Assistant United States Attorney

_____
MICHAEL C. JOHNSON, DC Bar #391813
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Tenth Floor
Washington, D.C.  20001
(202) 514-7220

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE TO STOP AIRPORT      )
EXPANSION, <u>et al.</u>,              )
                               )
          Plaintiffs,          )
                               )
     v.                        )      Civil Action No. 02-0619 (JR)
                               )
DEPARTMENT OF TRANSPORTATION,  )
<u>et al.</u>,                        )
                               )
          Defendants.          )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**<u>INTRODUCTION</u>**

This case is yet another attempt by plaintiffs to prevent
any improvements at the East Hampton Airport, regardless of how
necessary and appropriate the improvements may be for the safety
of the community and those who use the airport.  Plaintiffs have
filed a petition for review with the U.S. Court of Appeals for
the Second Circuit, challenging the actions of the defendants
under the National Environmental Policy Act ("NEPA").  Rather
than proceed in a Court of Appeals with the acts complained of
herein, plaintiffs have filed suit in this Court, in an effort to
enjoin defendants from disbursing funds to the Town of East
Hampton necessary for "apron reconstruction or rehabilitation."
Complaint at ¶ 2.

This matter should be dismissed for several reasons.  First,
because plaintiffs allege no concrete and particularized injury,

they lack standing.  Second, plaintiffs are required by statute to file a petition for review in the U.S. Court of Appeals in order to challenge an administrative order by the FAA.  Rather than file a petition for review with a circuit court, plaintiffs have filed suit here.  This matter should therefore be dismissed.

**STATUTORY AND REGULATORY FRAMEWORK**

1.  AIRPORT IMPROVEMENT PROGRAM GRANTS AND GRANT
    ASSURANCES

The FAA facilitates the maintenance and development of a national network of public-use airports that can meet the nation's present and future civil aviation needs by, among other things, providing monetary grants to state and local agencies that own and operate airports.  Since 1982, these funds have been disbursed through the FAA's Airport Improvement Program ("AIP") pursuant to section 505(a) of the Airport and Airway Improvement Act of 1982 ("AAIA"), Pub. L. No. 97-248, tit. V, 96 Stat. 671, 676 (1982), as amended.  Cf. 49 U.S.C. §47104(a) (codification).[1]

Congress requires that grant applications contain written "assurances" that an airport sponsor, such as the Town of East Hampton, seeking federal funds will abide by numerous requirements, many of which are set out in 49 U.S.C. §§ 47106 and

---

[1]  Congress revised and reenacted the AAIA "without substantive change" when it codified Title 49 in 1994.  See Pub. L. No. 103-272, § 1(a), 108 Stat. 745, 745 (1994); H.R. Rep. No. 103-180, at 5, 561-63, 628 (1993), reprinted in 1994 U.S.C.C.A.N. 818, 822, 1378-80, 1445.

47107.  Congress has made the Secretary of Transportation
responsible for ensuring compliance with these requirements, 49
U.S.C. § 47107(g), and has authorized the Secretary to approve
AIP grant applications only if the airport sponsor provides
written assurances that are "satisfactory to the Secretary."
See, e.g., 49 U.S.C. §§ 47107(a), (b).

    Congress has also authorized the Secretary to utilize notice
and comment procedures to modify existing grant assurances and to
require additional assurances from sponsors that the Secretary
considers necessary.  See 49 U.S.C. § 47107(h); see also id.
§§ 46101, 47107(g)(1), 47122(a).  The Secretary has exercised
this authority by promulgating and periodically revising a set of
"standard grant assurances."  See, e.g., 64 Fed. Reg. 45,008
(1999); 62 Fed. Reg. 29,761 (1997).  The standard assurances
currently in effect are published in the Federal Register at 64
Fed. Reg. 45,010-11 and 62 Fed. Reg. 29,763-68.[2]

    If the Secretary approves a sponsor's grant application, the
sponsor may enter into a grant agreement with the government on
terms established by the Secretary.  See 49 U.S.C. § 47108(a).
Because grant agreements normally incorporate an exact copy of
the standard grant assurances, they bind the airport sponsor to
comply with the assurances' conditions.

---

    [2]  The FAA's standard grant assurances are published in the
Federal Register.

3

FAA officials administering these programs are assisted in
their analysis of airport operations by reference to an Airport
Layout Plan ("ALP"), prepared by the airport sponsor when
initially building an airport or when expanding an existing
airport, extending runways, adding new structures or making
infrastructural improvements.  Typically, ALPs depict existing or
contemplated structures, although a depiction of contemplated
structures "does not represent a commitment by the sponsor to
implement the indicated development."  See FAA Order 5050.4A,
"Airport Environmental Handbook," ¶ 30(B) (Exhibit 1).  When an
airport sponsor seeks to expand an airport or otherwise alter the
airport configuration, a revised ALP and FAA Form 7460 seeking
approval thereof are submitted to the FAA for review and
approval.  The FAA reviews planned development for issues of
safety, efficiency, utility, and environmental impact.

> 2. THE NATIONAL ENVIRONMENTAL POLICY ACT AND ITS
>    IMPLEMENTING REGULATIONS

The purpose and intent of the National Environmental Policy
Act ("NEPA"), 42 U.S.C. § 4321-4347(d), is to foster better
decision-making and informed public participation for federal
actions that affect both man and nature.  42 U.S.C. § 4321; 40
C.F.R. § 1500.1(c) ("NEPA's purpose is not to generate paperwork
- even excellent paperwork - but to foster excellent action.").
NEPA mandates the procedures by which agencies must consider the
environmental impacts of their actions, but does not dictate the

4

substantive results of that consideration.   <u>Robertson v. Methow</u>
<u>Valley Citizens Council</u>, 490 U.S. 332, 350 (1989).

     NEPA focuses the attention of federal agencies and the
public on the environmental consequences of a proposed action
before a decision is made to proceed.   NEPA achieves this end by
imposing procedural, not substantive requirements:  "NEPA does
not work by mandating that agencies achieve particular
substantive environmental results."  <u>Marsh v. Oregon Natural</u>
<u>Resources Council</u>, 490 U.S. 360, 371 (1989).  NEPA requires an
agency to consider the environmental impacts of proposed federal
actions, and if an agency proposes to undertake "a major federal
action[] significantly affecting the quality of the human
environment," NEPA requires the preparation of an environmental
impact statement ("EIS") to consider the environmental
consequences of the proposed action.  42 U.S.C. § 4332(2)(C).
Regulations promulgated by the Council on Environmental Quality
("CEQ"), 40 C.F.R. §§ 1500-1517, provide guidance for
implementation of NEPA, and are entitled to substantial
deference.  <u>Robertson v. Methow Valley Citizens Council</u>, 490 U.S.
332, 355 (1989); <u>Andrus v. Sierra Club</u>, 442 U.S. 347, 358 (1979).

     Depending on the nature of the federal project, an agency
may comply with NEPA in a variety of ways, including performing
an environmental assessment ("EA") that leads to a determination
that a full-blown EIS is required (if the project is likely to

have significant environmental effects), performing an EA that leads to a finding of no significant impact (if it does not), or a determination that a categorical exclusion is applicable (if the project is of a type that generally does not have significant environmental effects).  See 40 C.F.R. § 1501.3 (governing whether to perform an EA), 40 C.F.R. § 1501.4 (governing whether to prepare an EIS), 40 C.F.R. § 1508.4 (authorizing agencies to prescribe "categorical exclusions" from the requirement of either an EA or an EIS), 40 C.F.R. § 1508.13 (findings of no significant impact).  The federal "agencies have the initial and primary responsibility to determine the extent of the impact and whether it is significant enough to warrant preparation of an EIS."  This is accomplished by preparing an EA which "provides a basis for a finding of no significant impact. ("FONSI")"  Coalition of Sensible Transportation v. Dole, 826 F.2d 60, 66 (D.C. Cir. 1987) (citing 40 C.F.R. §§ 1501.4(b), (c); Id. § 1508.9 (defining EA); Id. § 1508.13 (defining FONSI).  "Thus under NEPA, an agency's final action will be either an EIS or a FONSI."  California Dept. of Health Services v. Babbitt, 46 F.Supp.2d 13, 21 (D.D.C. 1999). See also, 40 C.F.R. § 1500.3.

## STATEMENT OF FACTS

The East Hampton Airport is owned and operated by the Town of East Hampton, New York (the "Town").  The Town is vested with independent governing authority and is governed by an elected

6

legislative body, known as the "Town Board."  Complaint at ¶ 16.

An Airport Layout Plan ("ALP") is required by statute for the Federal Aviation Administration ("FAA") to make funding grants to locally owned and operated airports.  In the late 1980s the Town prepared and submitted an ALP to the FAA, and in 1989 the FAA approved the Town's ALP.  Complaint at ¶¶ 19, 20.  In 1992, the Town Board commissioned a consulting firm to prepare an updated ALP.  The resulting plan was completed in 1994.  Id. at ¶ 26.  The Town Supervisor signed the 1994 ALP and submitted it to the FAA for approval, and it was approved by the FAA on August 23, 1994.  Id. at ¶ 34.  The FAA issued grants of federal funds to the Town for airport development projects based upon the 1989 ALP, and later the 1994 ALP.  Id.

In the spring of 2001, plaintiffs in this case, the Committee to Stop Airport Expansion, et al., argued to the FAA that the 1994 ALP was invalid, as it had not been properly approved by the Town Board.  In a July 20, 2001 legal memorandum, the FAA concluded that the 1994 ALP was in fact invalid for that reason.  Id. at ¶ 35.

The FAA then notified the Town on July 25, 2001, that it was unable to locate a copy of the 1989 ALP, which was the ALP of record after the invalidation of the 1994 ALP.  Id.  On August 3, 2001, the Town Board adopted Resolution No. 1023, authorizing the Town Supervisor to re-sign and submit a copy of the 1989 ALP to

7

FAA.  Id. at ¶ 36.  This ALP was submitted on August 8, 2001.
Id.  By letter dated August 20, 2001, FAA re-approved the 1989
ALP re-submitted and re-signed by the Town in 2001.  Id. at
¶ 37.[3]

In the interim, on April 6, 2001, the Town Board adopted
Resolution No. 483, authorizing the Town Supervisor to make an
application for an Airport Improvement Plan ("AIP") grant to fund
apron repaving and marking at the East Hampton Airport.  Id. at
¶ 17.  In the resolution, the Town Board authorized the Town
Supervisor to notify the FAA that the project qualifies for a
categorical exclusion from the environmental review requirements
under NEPA.  Id.  On or about September 26, 2001, the FAA granted
final approval to the Town's request for AIP funding for the
proposed apron project, finding that the project met the
requirements for a categorical exclusion and therefore that no
further environmental review was necessary.  Id. at ¶ 42.

On October 19, 2001, plaintiffs filed a petition for review
with the U.S. Court of Appeals for the Second Circuit,
challenging the FAA's August 20, 2001 decision re-approving the
1989 ALP.  See Committee to Stop Airport Expansion v. FAA, No.
01-4181 (2d. Cir.).  In their petition for review, plaintiffs

---

[3]  When the FAA approved the 1989 ALP in August 2001 it did so
conditionally, requiring that no development could take place on
the airport without an appropriate environmental review and
written environmental finding, and airspace review.

contended that the FAA violated NEPA when it issued its August
20, 2001 decision.  In addition, plaintiffs argued that the FAA's
August 20, 2001 decision was arbitrary, capricious, and an abuse
of discretion under the Administrative Procedure Act.  See
Exhibit A (excerpts from plaintiffs' Second Circuit brief).  All
briefing has been completed by the parties on plaintiffs'
petition for review, and the matter is currently pending a
decision by the Second Circuit.[4]

Plaintiffs also filed on April 24, 2002, an administrative
complaint with the FAA in Committee to Stop Airport Expansion v.
Town of East Hampton, FAA Docket No. 16-02-04.  In their
administrative complaint, plaintiffs allege that the Town of East
Hampton "has violated its grant assurances by submitting to the
FAA as its current airport layout plan" the ALP that was approved
by the Town in 1989.  See Exhibit B, (Administrative Complaint)
at ¶ 3.  In an Order of Dismissal dated June 24, 2002, the FAA's
Director, Office of Airport Safety and Standards, determined that
plaintiffs' complaint "should be dismissed with prejudice in
accordance with 14 C.F.R. § 16.25(b) for failure to state a claim
that warrants an investigation or further action by the FAA."
See Exhibit C, (FAA Order of Dismissal dated June 24, 2002), at

---

[4]   According to the Second Circuit's docket sheet in Committee
to Stop Airport Expansion v. FAA, No. 01-4181 (2d. Cir.), oral
argument will be scheduled in the case "for the week of September
9, 2002 or thereafter."

p.5.

In its Order of Dismissal, the FAA specifically stated that its decision did not constitute a "final agency decision:"

> This Director's Determination is an initial agency determination and does not constitute a final agency decision and order subject to judicial review under 14 C.F.R. § 16.247(b)(2).  Any party to this proceeding adversely affected by the Director's Determination may appeal the initial determination to the FAA Associate Administrator for Airports pursuant to 14 C.F.R. § 16.33(b) within thirty (30) days after service of the Director's Determination.

Id. at p.6.

In the case before this Court, plaintiffs have sued the United States Department of Transportation ("DOT"), the Secretary of DOT in his official capacity, the Federal Aviation Administration ("FAA"), and the Administrator of FAA in her official capacity.  See Complaint at ¶¶ 9-12.  Their Complaint against defendants (hereafter "defendants" or "the FAA") contains four counts.  In Count I, they allege that defendants improperly relied on the 1994 ALP when defendants determined that the apron reconstruction project should be categorically excluded from NEPA review.  Id. at ¶¶ 50-55.  They allege in Count II that defendants were arbitrary and capricious in concluding that the apron reconstruction project qualifies for a categorical exclusion, because the apron project "is part of a three-phase plan that ultimately will expand the aircraft parking capacity at the East Hampton Airport."  Id. at ¶¶ 57-63.  In Count III

10

plaintiffs allege that defendants failed to examine whether the
proposed apron project "is likely to have significant cumulative
impacts." Id. at ¶¶ 65-70.  Finally, in Count IV, plaintiffs
contend that the "1989/2001" ALP did not accurately reflect the
proposed apron project.  Id. at ¶¶ 72-78.

By way of relief, plaintiffs ask that this Court vacate
defendants' determination that the apron project is entitled to a
categorical exclusion.  Complaint at p.18.  In addition, they
seek to enjoin defendants from disbursing any funds to the Town
(1) in connection with construction of the apron project, and (2)
in connection with the FAA's August 2001 approval of the grant
application for the construction of the apron project.  Id. at
p.19.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief can be granted is proper when it appears
that the plaintiff can prove no set of facts in support of the
claims that would entitle the plaintiff to relief.  Neitzke v.
Williams, 490 U.S. 319, 326-327 (1989), citing Hishon v. King &
Spalding, 467 U.S. 69, 73 (1984) and Conley v. Gibson, 355 U.S.
41, 45-6 (1957).  In reviewing a 12(b)(6) motion, the Court
should accept as true all well-pleaded facts, but "if as a matter
of law 'it is clear that no relief could be granted under any set
of facts that could be proved consistent with the allegations,' a

11

claim must be dismissed, without regard to whether it is based on
an outlandish legal theory or on a close but ultimately
unavailing one." Neitzke v. Williams, 490 U.S. at 327, citing
Hishon v. King & Spalding, 467 U.S. at 73.

The standard of review for a motion to dismiss for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1) is
virtually identical to that used for 12(b)(6) motions. Tripp v.
Executive Office of the President, 200 F.R.D. 140, 142 (D.D.C.
2001), citing Vanover v. Hantman, 77 F.Supp.2d 91, 98
(D.D.C.1999) (other citations omitted). In the 12(b)(1) context,
the plaintiff bears the burden of proving jurisdiction. See id.

## ARGUMENT

Plaintiffs' claim should be dismissed for two principal
reasons. First, because plaintiffs allege no concrete and
particularized injury, but only geographic proximity to the
airport, the claims should be dismissed for lack of standing.
Second, plaintiffs must file any challenge to an FAA
administrative order in the Court of Appeals.

A.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF
     STANDING

The standing requirement of Article III requires a
plaintiff, "at an irreducible minimum," to show: (1) a distinct
and palpable injury, actual or threatened; (2) that the injury is
fairly traceable to the defendant's conduct; and (3) that a
favorable decision is likely to redress the complained-of injury.

12

Bennett v. Spear, 520 U.S. 154, 162 (1997); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Animal Legal Defense Fund, Inc. v. Glickman, 154 F.3d 426, 431 (D.C. Cir. 1998).  Both the Supreme Court and the D.C. Circuit have recently emphasized that "a plaintiff may have standing to challenge the failure of an agency to abide by a procedural requirement only if that requirement was designed to protect some threatened concrete interest of the plaintiff."  Animal Legal Defense Fund, Inc., 130 F.3d at 470-71, citing Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc), and Lujan v. Defenders of Wildlife, 504 U.S. at 573 n.8 (internal quotation marks omitted).

Plaintiffs lack standing because they have not shown how they have been harmed by the FAA's actions at issue in this case. "[A] party claiming to be injured by a procedural violation must show that the violation is likely to harm the party in a specific and individualized way."  Animal Legal Defense Fund, 130 F.3d at 471, citing Florida Audubon Soc'y, supra, and Lujan v. Defenders of Wildlife, supra.  Here, plaintiffs have failed to make the case that they have suffered any concrete injury as distinguished from abstract, speculative harm.

Geographic proximity does not, in and of itself, confer standing on an entity under NEPA or any other statute.  Rather, it is the concrete and particularized injury which has occurred, or is imminent *due to* geographic proximity to the action

13

challenged, that gives rise to Article III standing.  City of
Olmsted Falls v. FAA, 292 F.3d 261, 267 (D.C. Cir. 2002).
Plaintiffs refer only to their proximity to the airport and the
noise caused by overflight activity.  Complaint at ¶¶ 5-7.
Plaintiffs nowhere allege, however, that this noise will become
more bothersome should the apron repaving be performed:  they
allege only that they would be affected *if* the noise level
increased.  Id. at ¶ 8.  In fact, repaving an apron merely
repairs the existing pavement, it does not create new facilities.
Moreover, apron repaving could not increase overflight noise
because aprons are used for airplane parking, not for takeoff or
landing.  Id. at ¶ 18.

In short, plaintiffs cannot demonstrate that they have
suffered or will suffer an "injury-in-fact."  They cannot show
"an invasion of a legally protected interest which is (a)
concrete and particularized and (b) actual or imminent, nor
conjectural or hypothetical."  New World Radio, Inc. v. FCC, 2002
WL 1407161 at *3 (D.C. Cir. July 2, 2002), citing SunCom Mobile &
Data Inc. v. FCC, 87 F.3d 1386, 1388 (D.C. Cir. 1996).

In short, plaintiffs lack standing to challenge the FAA's
actions here.  Defendants' motion to dismiss should therefore be
granted.

B.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF
      SUBJECT MATTER JURISDICTION BECAUSE THE CIRCUIT COURTS
      HAVE EXCLUSIVE JURISDICTION

Under Article III of the United States Constitution, federal courts have limited jurisdiction and may only exercise jurisdiction granted to them by Congress.  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  Generally, when considering a motion to dismiss for lack of subject matter jurisdiction, the court and parties must accept plaintiffs' factual allegations, on the face of the pleadings, as true.  Lujan, 504 U.S. at 561.  The parties may produce affidavits and other materials to support their position on subject matter jurisdiction, and the court is free to weigh such evidence in assessing its power to decide the case.  Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995).  It is the burden of the party claiming subject matter jurisdiction, however, to demonstrate that it exists.  Georgiades v. Martin-Trigona, 729 F.2d 831, 833 (D.C. Cir. 1984); Pitney Bowes Inc. v. United States Postal Service, 27 F. Supp.2d 15, 19 (D.D.C. 1998).

Here, plaintiffs' Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction over the claims at the heart of this suit.  As explained below, plaintiffs' Complaint demonstrates that plaintiffs essentially seek to have this Court review claims they have raised, and must raise, before a Circuit Court.

15

This Court lacks jurisdiction because the Circuit Courts have exclusive jurisdiction over petitions for review of FAA orders, pursuant to 49 U.S.C. § 46110.  Section 46110(a) provides that "a person disclosing a substantial interest in an order issued by . . . the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator . . . under this part may apply for review of the order by filing a petition for review in the United States Court of Appeals . . . ."  49 U.S.C. § 46110(a).  Section 46110(c) goes on to provide that the appellate court's jurisdiction is exclusive:  "When the petition is sent to the . . . Administrator, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the . . . Administrator to conduct further proceedings."  Id., ¶ 46110(c) (emphasis added).

Although plaintiffs appear to assert that jurisdiction over these claims lies with this Court pursuant to the general federal jurisdiction grant, 28 U.S.C. § 1331 -- see Complaint at ¶ 3 -- a party "may not bypass the specific method that Congress has provided for reviewing adverse agency action simply by suing the agency in federal district court under [section] 1331."  General Finance Corp. v. FTC, 700 F.2d 366, 368 (7th Cir. 1983).  That is, "[i]n the absence of a statute prescribing review in a particular court, 'nonstatutory' review may be sought in district

16

court under any applicable jurisdictional grant." <u>City of Rochester v. Bond</u>, 603 F.2d 927, 931 (D.C. Cir.1979)).  Where an agency's organic statute or other relevant provision vests review of agency action in a specific forum or venue, however, such as the courts of appeals, such jurisdiction is exclusive.  <u>See</u> <u>id.</u> ("The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals."); <u>Media Access Project v. FCC</u>, 883 F.2d 1063, 1067 (D.C. Cir. 1989) ("Statutory review in the agency's specially designated forum prevails over general federal question jurisdiction in the district courts."); <u>General Finance Corp.</u>, 700 F.2d at 368; <u>International Brotherhood of Teamsters v. Pena</u>, 17 F.3d 1478, 1481-82 (D.C. Cir. 1994).  <u>Accord</u> <u>Erienet, Inc. v. Velocity Net, Inc.</u>, 156 F.3d 513, 518 (3d Cir. 1998).

Therefore, the FAA's decision in September 2001 -- in which the FAA approved the apron repaving and marking project by lifting the conditions imposed by the ALP, and funded the project -- cannot be challenged in this Court.  Plaintiffs can only raise such a claim in the U.S. Courts of Appeal.  <u>See</u> 49 U.S.C. § 46110.

Morever, even if plaintiffs sought now to bring such a claim to a U.S. Court of Appeals, the claim would be untimely.  Section 46110(a) sets forth the filing and venue provisions for

challenging an order, such as the September 2001 Order permitting and funding the airport repaving and marking.  It provides that an aggrieved person "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."  Id.  The statute makes clear that such an appeal must be timely brought:  "The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day."  Id.  Here, plaintiffs are challenging, by way of their Complaint to this Court which was filed in 2002, the FAA's Order issued in September of 2001.  They have not only raised their objection in the wrong venue, but have also failed to file their objection "not later than 60 days" after the September 26, 2001 Order was issued.  This Court lacks jurisdiction to consider such a claim.

C.  <u>THIS COURT ALSO LACKS JURISDICTION OVER THE NEPA CLAIMS PLAINTIFF SHOULD HAVE RAISED IN A COURT OF APPEALS</u>

Courts have found that certain determinations made by the FAA -- such as "determinations regarding the environmental impact of an airport," bound up with the FAA's decision to fund airport development -- are taken in substantial part pursuant to the FAA's organic statute, irrespective of other statutory authority

18

that may be involved.   National Parks and Conservation Assoc. v. FAA, 998 F.2d 1523, 1528 (10th Cir. 1993).   Accordingly, as above, the U.S. Courts of Appeals have exclusive jurisdiction to review such determinations, pursuant to 49 U.S.C. § 46110.   Id.; Sutton v. United States Dep't of Transp., 38 F.3d 621, 625 (2d Cir. 1994).

The D.C. Circuit has been clear that the exclusive jurisdiction provision of Section 46110 applies without regard to other substantive claims, such as NEPA, that might be asserted in a complaint:   "The choice of forum is . . . for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged." City of Rochester v. Bond, 603 F.2d 927, 936 (D.C. Cir. 1979) ("we disagree that the district court may exercise concurrent jurisdiction merely because a violation of NEPA is alleged"); see also Suburban O'Hare Comm'n v. Dole, 787 F.2d 186, 192 (7th Cir. 1986) ("[w]hen an agency decision has two distinct bases, one of which provides for exclusive jurisdiction in the courts of appeals, the entire decision is reviewable exclusively in the appellate court."); Sutton, 38 F.3d at 625.   "[W]hen review of an agency order is at issue and when Congress has vested exclusive jurisdiction over that review in the Courts of Appeals, NEPA does not provide independent grounds for district court jurisdiction." National Parks & Conservation Assoc., 998 F.2d 1523, 1527 (10th

19

Cir. 1993) (quotation omitted).

## **CONCLUSION**

For the above reasons, any which may be presented in defendants' reply brief, and any which may be presented at a hearing on this matter, defendants' Motion to Dismiss should be granted and this matter should be dismissed with prejudice.

Respectfully submitted,

_____
ROSCOE C. HOWARD, JR., DC Bar #246470
United States Attorney

_____
MARK E. NAGLE, DC Bar #416364
Assistant United States Attorney

_____
MICHAEL C. JOHNSON, DC Bar #391813
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Tenth Floor
Washington, D.C.  20530
(202) 514-7220

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of July, 2002, I

caused a true and correct copy of the above and foregoing

<u>DEFENDANTS' MOTION TO DISMISS</u>,
<u>MEMORANDUM IN SUPPORT THEREOF</u>

and a proposed Order to be served by first class mail, postage

prepaid, on:

Sheila D. Jones, Esq.
Akin, Gump, Strauss, Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036

_____
MICHAEL C. JOHNSON
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE TO STOP AIRPORT          )
EXPANSION, <u>et</u> <u>al.</u>,                )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )     Civil Action No. 02-0619 (JR)
                                   )
DEPARTMENT OF TRANSPORTATION,       )
<u>et</u> <u>al.</u>,                           )
                                   )
          Defendants.              )
_____)


## ORDER

     UPON CONSIDERATION of defendants' Motion to Dismiss, the

memorandum in support thereof, the grounds stated therefor, the

opposition thereto, and the entire record herein, it is on this

_____ day of _____, 2002, hereby

     ORDERED that defendants' motion be, and it hereby is,

GRANTED.  This matter is dismissed with prejudice.


                         _____
                         UNITED STATES DISTRICT JUDGE

copies to:

MICHAEL C. JOHNSON
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Tenth Floor
Washington, D.C.  20530

SHEILA D. JONES, ESQ.
Akin, Gump, Strauss, Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036